IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLEE R. EDMONDS, | No. 2:13-CV-1033-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 13) and defendant's cross-motion for summary judgment (Doc. 15).

/ / /

/ / /

/ / /

## I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on December 14, 2009.  In the application, plaintiff claims that disability began on the same date.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on September 12, 2011, before Administrative Law Judge ("ALJ") Joseph F. De Pietro.  In a September 23, 2011, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): seizures secondary to low-grade neuroglial tumor; and intraventricular lesions, status post third ventriculostomy and one-stage non-dominant right temporal lobectomy;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform work at all exertional levels with the following non-exertional limitations: she could frequently perform postural activities, except that she is unable to climb ladders, ropes, or scaffolds; she must avoid moderate exposure to hazards; she could understand, carry out, and remember simple instructions; she could make simple work-related decisions; she could respond appropriately to supervision, co-workers, and work situations; and she could deal with changes in a routine work setting;

4. Considering the claimant's age, education, work experience, residual functional capacity, and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on February 17, 2013, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to

support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ erred in concluding that plaintiff's seizure disorder does not meet or medically equal Listing 11.02A;  (2) the ALJ erred by failing to articulate reasons for rejecting limitations opined by Dr. Kerns; and (3) the ALJ erred by failing to call a vocational expert.

**A.   Listing 11.02A**

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.

1985).

Plaintiff argues:

> The ALJ found that the evidence supported that the first 3 requirements of Listing 11.02A were satisfied. (Citations to hearing decision omitted). However, the ALJ found that [plaintiff] did not satisfy the fourth requirement. Specifically, the ALJ concluded that Ms. Edmonds' treating neurosurgeon stated that Ms. Edmonds "is often responsive during seizures." Carlee Edmonds maintains that the ALJ isolated the record in reaching this conclusion. . . .
> Close scrutiny of the longitudinal treatment record demonstrates that Ms. Edmonds suffered from absence-type seizures or was unresponsive during seizures. (A.R. 248, 250, 252, 263, 269, 271, 401, 445, 449, 469, 470-71, 475, 478, 486). Carlee Edmonds concedes that at times she would not lose awareness of her surrounding during a seizure. (A.R. 410). However, more often than not, the record reflects that Carlee Edmonds was not responsive during seizures. Ms. Edmonds maintains that being unresponsive is synonymous with loss of consciousness. . . . The regulations do not differentiate between partial and complete loss of consciousness.

In noting that, according to plaintiff's treating neurosurgeon, plaintiff is "often responsive during seizures," the ALJ cited to Dr. Kurtis I. Auguste's May 11, 2011, report at Ex. 19F. Dr. Auguste provides the following description of plaintiff's seizures:

> . . .Her first seizures occurred at 17 years of age. They are characterized by approximately 30 seconds of deja vu sensation and/or staring. They occasionally generalize secondarily. She is often responsive during her seizures, and her seizures are commonly followed by fatigue. She occasionally has a premonitory feeling of a headache prior to her seizures. Currently, her seizures occur approximately 5 times per month.

The issue is whether the record contains evidence that plaintiff's seizures resulted in a loss of consciousness. An examination of the evidence cited by plaintiff reflects that the ALJ was correct in concluding that they do not. For example, plaintiff cites page 248 of the record, which is a progress note for a September 23, 2009, doctor visit. In this note, the doctor states that "[w]itnessed seizure activity is described as generalized tonic-clonic seizure and lack of awareness of surroundings." The doctor also notes: "She has had Absence-type seizures recently, 2 in the last 2 weeks." There is mention of loss of consciousness. Her seizures are similarly described in progress notes for a July 21, 2009, visit at page 250 of the record.

Likewise, for the progress notes at pages 252, 263, 269, and 271, the seizures are described as producing a "lack of awareness of surroundings." Plaintiff has not identified any portion of the record documenting a loss of consciousness as a result of seizures, and plaintiff cites no authority supporting her contention that "lack of awareness" equates to "loss of consciousness."

### B.     Evaluation of Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and

legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

As to Dr. Kerns, the ALJ stated:

> Reviewing psychologist Andres Kerns, Ph.D., opined that while the claimant has no organic mental impairment, she could understand, carry out, and remember simple instructions; she could make simple work-related decisions; she could respond appropriately to supervision, co-workers, and work situations; and she could deal with changes in a routine work setting.  (Ex. 9F).

The ALJ gave Dr. Kerns' opinions "significant weight."  According to plaintiff, the ALJ erred because the "decision was silent as to Dr. Kerns' opinions regarding the multiple moderate limitations."  Specifically, plaintiff cites Dr. Kerns' opinion that plaintiff has moderate limitation in the following areas: (1) the ability to understand, remember, and carry out detailed instructions; (2) the ability to maintain attention and concentration for extended periods; (3) the ability to perform activities within a schedule, maintain regular attendance, and be punctual;   (4) the ability to complete a normal workday and workweek; and (5) the ability to respond appropriately to changes in the work setting.

The court finds no error.  As plaintiff and defendant both note, Dr. Kerns ultimately concluded that plaintiff can perform "competitive, remunerative, unskilled work" on a sustained basis.  The doctor specifically stated that plaintiff has the ability to: (1) understand, carry out, and remember simple instructions; (2) make simple work-related decisions; (3) respond appropriately to supervision, co-workers, and work situations; and (4) deal with changes in a routine work setting.  All of these conclusions are reflected in the ALJ's residual

functional capacity setting.  In concluding that plaintiff can perform unskilled simple work, the ALJ adequately captured Dr. Kerns' assessed moderate limitations.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008).

### C. **Vocational Finding**

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity.  The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[1]  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).

---

[1] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).
    Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

"If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Plaintiff argues:

> Carlee Edmonds has demonstrated that her non-exertional limitations are sufficiently severe warranting the use of a vocational expert. The ALJ erred by failing to call a vocational expert. . . .

Plaintiff does not, however, identify which non-exertional limitations preclude application of the Grids. Specifically, plaintiff has not shown that she has non-exertional limitations which impact her exertional capabilities. Plaintiff's conclusory argument is unpersuasive.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 13) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 15) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: October 10, 2014

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE